IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


MICHAEL LEAVY                                                          PLAINTIFF

v.                              Civil No. 6:16-CV-06124

CHARDONAY DIALYSIS CO. and NURSE                          DEFENDANTS
ABRAH ELLIS


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions

of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District

Judge, referred this case to the undersigned for the purpose of making a Report and

Recommendation.

Currently before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 38).

## I.  BACKGROUND

Plaintiff filed his Complaint on December 7, 2016, alleging he was denied adequate

medical care by Defendants, resulting in the loss of sight in his left eye.[1]  (ECF No. 1; 42 at 2).

Plaintiff has End Stage Renal Disease,[2] and undergoes dialysis[3] three times a week.  (ECF Nos.

40 at ¶ 2; 42 at 10).  His allegations center on the dialysis he was given by Defendant Ellis, an

---

[1] Based on the medical record supplied by Plaintiff, he lost vision in his right eye because of trauma in 1974.  (ECF No. 42 at 10).  The loss of vision in his left eye, allegedly from the current incident, therefore resulted in the loss of all or most of his vision.

[2] Chronic kidney or renal disease "is long-standing, progressive deterioration of renal function. Symptoms develop slowly and in advanced stages include anorexia, nausea, vomiting, stomatitis, dysgeusia, nocturia, lassitude, fatigue, pruritus, decreased mental acuity, muscle twitches and cramps, water retention, undernutrition, peripheral neuropathies, and seizures. . . .Treatment is primarily directed at the underlying condition but includes fluid and electrolyte management, blood pressure control, treatment of anemia, various types of dialysis, and kidney transplantation."  https://www.merckmanuals.com/professional/genitourinary-disorders/chronic-kidney-disease/chronic-kidney-disease.  (last accessed July 20, 2018).

[3] Hemodialysis, commonly referred to as dialysis, is a process where "blood is removed from the body and filtered by an artificial kidney machine."  https://www.merckmanuals.com/home/kidney-and-urinary-tract-disorders/dialysis/dialysis.  (last accessed July 20, 2018).

employee of Defendant Chardonay, on January 14 and 16, 2015, while incarcerated in the Arkansas Department of Correction Ouachita River Unit (ORU).  (ECF No. 1 at 3-4).  Plaintiff alleges he did not meet the criteria for dialysis on Wednesday, January 14, 2015, because his blood pressure was too high, his blood count and body weight were too low, and he told Defendant Ellis he did not feel well.  (*Id*.).  Despite these health complaints, Defendant Ellis insisted on administering dialysis.  Plaintiff alleges he fell asleep and woke to Defendant Ellis placing cold towels on his face and injecting him with saline to cool him down.  He told Defendant Ellis his vision was blurry, and he had a headache.  She told him to return to the barracks and rest.  (*Id*.).  He alleges Defendant Ellis did not monitor his blood pressure during the dialysis.  (*Id*. at 4).  Plaintiff alleges a dialysis patient next to him said it looked as though he had been having a seizure before he was awakened.  (*Id*.).

On Friday, January 16, 2015, Plaintiff alleges he went to dialysis and told Defendant Ellis that his condition had not changed and was again given dialysis.  (*Id*. at 4). He was told to rest in the barracks after dialysis.  That night at approximately 8:00 p.m. his sight was getting worse, and he was instructed by the ORU hospital to put in a sick-call request. (*Id*.).  Plaintiff was then assisted to the phone, where he called his mother and told her what had happened.  The next morning Plaintiff was unable to see when he awoke.  (*Id*.).

Plaintiff alleges he was taken upstairs to the ORU Hospital, and then sent to St. Vincent's Hospital in Little Rock.  On admission at St. Vincent's, his blood pressure was "near stroke level," and his blood count was so low that he needed four pints of blood.  (*Id*.)  Plaintiff alleges a physician at St. Vincent's told him he should not have been on the dialysis machine.  (*Id*.).

When Plaintiff was returned to ORU hospital, he was seen by Dr. McKinney, who stated he should not have been placed on the dialysis machine.  Dr. McKinney told Plaintiff and his

family that he would arrange for him to be seen at the Jones Eye Clinic.  (*Id*.)  Plaintiff alleges the physician there told him the damage to the nerves around his eyes meant that he had an eighty-percent chance of never regaining his vision.  Plaintiff alleges the physician told him he had suffered a stroke due to high blood pressure, which had caused the damage.  He alleges the physician told him he should not have been placed on the dialysis machine with his high blood pressure.  (*Id*. at 5).

Plaintiff alleges any policy by Defendant Chardonay which permitted a dialysis nurse to initiate dialysis on a patient with high blood pressure and low blood count is unconstitutional.  (*Id*. at 6).

Plaintiff proceeds against both Defendants in their official and personal capacity.  (*Id*. at 5).  He seeks punitive damages.  (*Id*. at 6).

Defendants filed their Motion for Summary Judgment on January 29, 2018.  (ECF No. 38).  On January 30, 2018, the Court entered an Order directing Plaintiff to file a Response to the Motion.  (ECF No. 41).  Plaintiff did so on March 2, 2018.  (ECF No. 42).  On March 6, 2018, the Court entered a Show Cause Order directing Plaintiff to file a Statement of Disputed Facts.  (ECF No. 43).  Plaintiff filed a Statement of Disputed Facts on March 22, 2018.  (ECF No. 46).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a

genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

Defendants argue summary judgment should be granted in their favor because: (1) Plaintiff failed to exhaust his administrative remedies; and (2) even if Plaintiff had exhausted his administrative remedies, there is no evidence of deliberate indifference.  (ECF No. 39 at 6-13).

Plaintiff argues summary judgment should not be granted because: (1) the grievance process was unavailable to him; and (2) Defendant Ellis "totally disregarded" his reports to her concerning his health and failed to document "vital elements of medical importance."  (ECF No. 42 at 1-2).

### A.  Failure to Exhaust Administrative Remedies

There is no dispute that Plaintiff's grievance concerning his January 2015 dialysis was not filed until October 22, 2015.  There is also no dispute that this grievance was filed several months past the required deadline under AD 14-16, the ADC Directive controlling grievance procedures.

4

(ECF No. 39 at 7; 42 at 2).  Therefore, unless Plaintiff's situation qualifies for an exception to the mandatory exhaustion requirement, his claim is barred.

The Prison Litigation Reform Act ("PLRA"), mandates exhaustion of available administrative remedies before an inmate files suit.  Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances."  *Id.* at 219.  "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

The Eighth Circuit Court of Appeals recognizes only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or, (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 347 F.3d 736 (8th Cir. 2001) (explaining that a prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).  "Available remedies are capable of use for the accomplishment of a purpose: immediately utilizable and accessible." *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015)

(internal quotations and modifications omitted).  The Eighth Circuit has repeatedly held that a court is not permitted "to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'"  *Lyon v. Vande Krole*, 305 F.3d 806, 809 (8th Cir. 2002) (citing *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir.2000), *cert. denied*, 531 U.S. 1156 (2001).

Both Plaintiff and Defendants center their exhaustion argument on the language of AD 14-16 (D)(1) "Completion of Forms:"

> Inmates who have difficulty understanding how to complete the grievance forms or actually completing the forms should request and be provided assistance from staff. However, there is no prohibition against an inmate seeking assistance from another inmate IF the grievant has language barriers or cannot read or write.

(ECF Nos. 39 at 7; 40 at 41; 42 at 2) (emphasis in original).

Plaintiff argues the grievance process was unavailable to him.  Plaintiff states he was housed in the ORU Hospital for several months after the incident and asked for assistance with filing his grievance from nurses, mental health counselors, and hospital security staff to no avail. (ECF No. 42 at 1).  He alleges that on October 15, 2015, he received assistance in writing a "Request for Interview" to Warden Faust, asking for help with his problem.  Plaintiff alleges he received a response from Warden Faust on October 19, 2015, stating he could seek assistance from staff and other inmates to complete a grievance. (*Id*. at 2).  Plaintiff then sought and received assistance from another inmate and filed his grievance a few days later.  (*Id*.).  Plaintiff states the grievance was rejected as untimely.  He appealed this response, and the appeal response affirmed the grievance was untimely.  (*Id*.).

In sum, Plaintiff argues that he was not able to complete the form on his own and did not know it was permissible to seek help from another inmate to complete a grievance form until he was informed of this option by Defendant Faust.  The plain language of the policy defeats this

argument, as it clearly states an inmate may seek aid from another inmate if he or she cannot read or write.  Here, Plaintiff alleges he could not read or write due to his vision loss.  While the alleged failure of ORU hospital staff to provide aid in writing a grievance is troubling, the plain language of the policy permitted him to seek the aid of another inmate.  That Plaintiff incorrectly believed he could not do so did not make the grievance process unavailable to him.[4]  *See Lyon*, 305 F.3d at 809 (a court is not permitted "to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available.'").

Taking Plaintiff's allegations in the light most favorable to him, he failed to exhaust his administrative remedies, and his case is therefore barred.  There is no question of material fact on this issue, and Defendants are entitled to summary judgment as a matter of law.

### B.  Deliberate Indifference to Medical Needs

Even if Plaintiff had qualified for an exception to the exhaustion requirement, he failed to provide sufficient summary judgment evidence to establish deliberate indifference to his medical needs.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs.  *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012).  To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

---

[4] The Court notes that Plaintiff's submissions to this Court have been typewritten, complete, and overall well-prepared.

needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). The objective seriousness of any delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Plaintiff argues his loss of sight was caused by Defendant Ellis administering dialysis when his physical condition contraindicated dialysis, thereby causing his vision loss.  He further argues he was told by physicians at the ORU Hospital, St. Vincent's Hospital, and the Jones Eye Clinic that he should not have been placed on dialysis.  Plaintiff's sole medical submission to support these arguments is a January 20, 2015, medical record from St. Vincent's.  Nothing in this medical record states that he should not have been placed on dialysis or attributes his vision loss to his dialysis treatment.   Dr. Byron, an ophthalmologist, noted significant atherosclerosis and arteriovenous nicking present in the optic blood vessels, as well as edema and hemorrhages in the optic nerve.   He concluded that "the tempo of vision loss indicates either a vascular or inflammatory etiology.   In the setting of his ESRD[5] and severe hypertension and anemia on admission, I suspect he has had a complete infarction of his optic nerve."  He informed Plaintiff that the likelihood of his regaining vision was low, and he would need to be followed by a low vision specialist in the future.  (ECF No. 42 at 10).  He referred Plaintiff to Dr. Dworkin for further studies to rule out the inflammatory etiology.   (*Id.* at 10-11).   The anemia was attributed to "ESRD/chronic disease."  (*Id*. at 11).

In contrast, Defendants provided medical documentation that Plaintiff's vital statistics were taken before each dialysis treatment, and blood pressure readings were taken throughout each dialysis treatment.  (ECF No. 40 at 15, 20).  Plaintiff complained of a stomachache and diarrhea before the January 14, 2015, dialysis session, and terminated the treatment early against medical advice.  (ECF No. 40 at 15, 18).  In his affidavit, Dr. Muhammad Kashif, a board-certified nephrologist for Defendant Chardonay, stated Plaintiff met the criteria for dialysis on both dates.

---

[5] End Stage Renal Disease, https://www.merriam-webster.com/medical/ESRD (last accessed July 16, 2018).

He further stated Plaintiff exhibited no need for emergency treatment, and he would have ordered it if so indicated.  (ECF No. 40 at 8-10).

Without objectively verifiable medical evidence to support his arguments, Plaintiff has failed to clear the substantial evidentiary threshold needed to show Defendants deliberately disregarded his medical needs.  Instead, he merely states a layperson's speculative disagreement with the medical treatment provided, which is not actionable under § 1983. *See Nelson,* 603 F.3d at 449 ("prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.") (internal quotation marks and citations omitted)).

There is, therefore, no question of material fact on this issue, and Defendants are entitled to summary judgment as a matter of law.

## IV.  CONCLUSION

Accordingly, I recommend that Defendants' Motion for Summary Judgment (ECF No. 38) be GRANTED and Plaintiff's claims against all Defendants in this case be DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of July 2018.

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE